UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VINCENT JOHNNY AVALOS,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>SARA L. KIRCHEN-ROLPH, *et al.*,<br><br>　　　　Defendants. | Case No. 1:21-cv-00084-CDB (PC)<br><br>FINDINGS AND RECOMMENDATIONS TO DISMISS ACTION FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED<br><br>(Doc. 20)<br><br>**FOURTEEN (14) DAY DEADLINE**<br><br>Clerk of Clerk to assign a District Judge. |

　　　Plaintiff Vincent Johnny Avalos is a state prisoner proceeding pro se and *in forma pauperis* in this civil rights action brought under 42 U.S.C. § 1983. On November 20, 2022, Plaintiff filed a first amended complaint ("FAC") asserting constitutional and state law claims against employees of the Riverside County Superior Court ("Superior Court") in Indio, California, and the Substance Abuse Treatment Facility ("SATF") in Corcoran, California. (Doc. 20.) The Court has screened the first amended complaint and finds it fails to state a claim upon which relief can be granted; therefore, the complaint must be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i)–(ii) and 28 § 1915A(b)(1). The Court further finds that amendment would be futile and therefore recommends dismissal of this action with prejudice.

///

## I. SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner raises claims that are frivolous or malicious, fail to state a claim on which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(i)–(iii); 28 U.S.C. § 1915A(b). These provisions authorize the court to dismiss a frivolous *in forma pauperis* complaint *sua sponte*. *Neitzke v. Williams*, 490 U.S. 319, 322 (1989). Dismissal based on frivolousness is appropriate where the claim is "based on an indisputably meritless legal theory" or "whose factual contentions are clearly baseless." *Id.* at 327. The Court must dismiss a complaint if it lacks a cognizable legal theory or fails to allege sufficient facts to support a cognizable legal theory. *O'Neal v. Price*, 531 F.3d 1146, 1151 (9th Cir. 2008) (citing *Vaden v. Summerhill*, 449 F.3d 1047, 1050 (9th Cir. 2006)).

## II. PLEADING REQUIREMENTS

### A. Federal Rule of Civil Procedure 8(a)

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002). The statement must give the defendant fair notice of the plaintiff's claims and the grounds supporting the claims. *Id.* at 512.

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Plausibility does not require probability, but it requires more than the "sheer possibility" of a defendant's liability. *Id.* (quoting *Twombly*, 550 U.S. at 556). A claim is plausible when the facts pleaded allow the court to make reasonable inferences that the defendant is liable for wrongful conduct. *Id.* (quoting *Twombly*, 550 U.S. at 556).

2

However, courts "are not required to indulge unwarranted inferences." *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1064 (9th Cir. 2008).

The Court construes pleadings of *pro se* prisoners liberally and affords them the benefit of any doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citation omitted). This liberal pleading standard applies to a plaintiff's factual allegations but not to his legal theories. *Neitzke*, 490 U.S. at 330 n.9. Moreover, a liberal construction of the complaint may not supply essential elements of a claim not pleaded by the plaintiff. *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1257 (9th Cir. 1997). The mere possibility of misconduct and facts merely consistent with liability is insufficient to state a cognizable claim. *Iqbal*, 556 U.S. at 678; *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). Vague and conclusory allegations of official misconduct are insufficient to withstand a motion to dismiss. *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

Dismissal of a pro se complaint without leave to amend is proper only if it is "absolutely clear that no amendment can cure the defect." *Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) (quoting *Akhtar v. Mesa*, 698 F.3d 1202, 1212–13 (9th Cir. 2012)); *see Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011) ("Although leave to amend should be given freely, a district court may dismiss without leave where a plaintiff's proposed amendments would fail to cure the pleading deficiencies and amendment would be futile.").

**B.     Linkage and Causation**

Section 1983 provides a cause of action for the violation of constitutional or other federal rights by persons acting under color of state law. *See* 42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred." *Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003) (quoting *Baker v. McCollan,* 443 U.S. 137, 144 n.3 (1979)).

To state a claim under section 1983, a plaintiff must show a causal connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff. *See Rizzo v. Goode*, 423 U.S. 362, 373–75 (1976). The Ninth Circuit has held that a government actor may be liable under section 1983, if he performs an affirmative act,

1  participates in another's affirmative acts, or fails to perform an act which he is legally required to
2  do that causes the prisoner to suffer a deprivation of rights. *Johnson v. Duffy*, 588 F.2d 740, 743
3  (9th Cir. 1978) (citing *Sims v. Adams*, 537 F.2d 829 (5th Cir. 1976)). In addition to direct
4  participation, a government actor may be liable for "setting in motion a series of acts by others
5  which the actor knows or reasonably should know would cause others to inflict the constitutional
6  injury." *Preschooler II v. Clark Cnty. Sch. Bd. of Trustees*, 479 F.3d 1175, 1183 (9th Cir. 2007)
7  (quoting *Johnson*, 588 F.2d at 743).

### III. PLAINTIFF'S ALLEGATIONS AND CLAIMS

Plaintiff was convicted of attempted murder in the Superior Court for the County of Riverside ("Superior Court" or "trial court"). (Doc. 20.) At his sentencing hearing around July 13–17, 2007, Plaintiff represented himself and was removed from the courtroom. (*Id.* at 10.) After he was removed, Defendants Reed and Gonzalez, deputy clerks in the Superior Court, altered the abstract of judgment and minute order to state: "Prior to release, submit to HIV/AIDS test purs 1202.1 PC/1202.6PC to be conducted by med staff w RSO.[1] Results forwd to Clerk of Court for distribtn . . . ." (*Id.*) The abstract of judgment wrongfully reflected convictions for sex offenses for which Plaintiff was not convicted. Reed and Gonzalez knew or should have known that their actions were illegal. (*Id.* at 11.)

Consequently, he sustained imposition of a sentence above the statutory maximum. This unauthorized alteration of a legal document by Reed, Gonzalez, and the Superior Court "all violated Plaintiff's right to meaningful access to the sentencing court." (*Id.* at 13.) These acts were in retaliation for "invoking such rights to counsel on the day of his sentencing." (*Id.* at 14, 24.) The altered abstract of judgment resulted in blood being taken from him by physical force, and he suffered both physical and mental pain caused by the battery with the needle used to draw blood. (*Id.* at 10.) The falsified abstract amounted to libel per se, slander, and calumny and was a violation of the Tom Bane Civil Rights Act, California Civil Code § 52.1. (*Id.* at 10, 18.)

---

[1] "RSO" appears to refer to Riverside Sheriff's Office. The actual name of the office is Riverside County Sheriff. *See* Riverside County Sheriff, https://www.riversidesheriff.org (last visited Sept. 12, 2023).

1    On October 27, 2015, Defendant Kirchen-Rolph, a deputy clerk, sent a memorandum to
2 Defendant John Doe, Chief Medical Officer at CDCR; Defendant Rodriguez, correctional case
3 records analyst at SATF; and another correctional case records analyst at SATF.[2] (*Id.* at 22.)
4    On March 28, 2017, Defendants John Doe and Jane Doe in the Administrative
5 Segregation Unit/Short Term Restricted Housing Unit ("ASU/STRHU"), handcuffed Plaintiff
6 and took him out of his cell. (*Id.* at 18.) When Plaintiff asked if he could refuse the blood draw,
7 they said he was not allowed to refuse because it was being taken pursuant to a court order. (*Id.*)
8 These staff took Plaintiff to a medical "cage" specifically designed for inmate blood draws
9 without handcuffs, which allowed an inmate to stick an arm through the tray slot for the blood
10 draw. (*Id.* at 20.) Instead, Defendants placed handcuffs on Plaintiff and forced him to submit to a
11 blood draw for HIV/AIDS without removing the handcuffs or allowing him to appeal a decision
12 for the blood draw. (*Id.* at 11, 18, 20–21) Plaintiff asserts that Defendants' failure to first remove
13 the handcuffs constitutions deliberate indifference to Plaintiff's serious medical need for a
14 "proper" blood draw. (*Id.* at 20, 22.) The forcible taking of his blood was a violation of
15 Plaintiff's Fourteen Amendment right to substantive due process. (*Id* at 20.)
16    In "confidential correspondence" dated August 29, 2017, the correctional case records
17 manager from the California Department of Corrections and Rehabilitation ("CDCR") inquired
18 about the testing requirement.[3] (*Id.* at 11, 17.) This letter demonstrated that CDCR knew or
19 should have known the HIV/AIDS testing for a sexual offense was ordered in error. (*Id.* at 21.)
20    In an opinion dated January 10, 2019, the California Fourth District Court of Appeal
21 determined that the abstract of judgment erroneously required Plaintiff to submit to an
22 HIV/AIDS test. (*Id.* at 11, 13.) Therefore, the trial court did not have the authority to require
23 Plaintiff to submit to HIV testing while in prison, and the Court of Appeal ordered correction of
24 the abstract. (*Id.* at 13.)
25    Plaintiff initiated this action on January 21, 2021. (Doc. 1.) Plaintiff requested leave to file

---

[2] Plaintiff does not indicate the substance or nature of this memorandum. (Doc. 20 at 22.) This defendant appears to be J. Ortiz. (*See id.* at 4.)

[3] Plaintiff also alleges that Defendants Ortiz, Martinez, and Rodriguez wrote this letter. (*Id.* at 17, 21.)

5

an amended complaint, which the Court granted. (Docs. 17, 18.) In the amended complaint, Plaintiff names as defendants:

1. Sara L Kirchen-Rolph, Deputy Clerk and Court Officer, Superior Court, County of Riverside;
2. Megan Brinkmeyer, Staff Services Analyst, California Department of Justice;
3. Carol Reed, Deputy Clerk of Court, Superior Court, County of Riverside;
4. C. Samareta, Supervising. Clinical Lab Technologist, SATF;
5. Michelle Loyd, Supervising Clinical Lab Technologist, SATF;
6. J. Ortiz, Correctional Case Records Manager, SATF;
7. A. Martinez, Correctional Case Records Analyst, SATF;
8. Stephanie Rodriguez, Correctional Case Records Analyst, SATF;
9. John or Jane Doe, Chief Medical Office, SATF;
10. Godwin Ugwueze, laboratory staff or doctor, SATF;
11. John Doe, administrative segregation unit officer at SATF;
12. Stu Sherman, Warden of SATF;
13. Dr. Julius Metts, Primary Care Provider/Doctor for C Yard at SATF;
14. Jane Doe, Medical Staff/Nurse at SATF;
15. John Doe, Correctional Officer and Captain of C-Yard at SATF;
16. John Doe, Chief Medical Officer, SATF;
17. A. Gonzalez, Deputy Clerk, Superior Court, County of Riverside.

Liberally construing the amended complaint, Plaintiff asserts claims for violations of his First Amendment right against retaliation and right to access the courts; excessive force in violation of the Eighth Amendment's prohibition on cruel and unusual punishment; denial of Fourteenth Amendment due process; violation of the Fourth Amendment's prohibition on unlawful search and seizures; violation of the California Bane Act; intentional infliction of emotional distress; and battery. Plaintiff alleges that he suffers from "mental and physical stress" from the denial of his access to the courts. (Doc. 20 at 16.) Plaintiff sues for damages, declaratory judgment, attorney's fees, and a preliminary or permanent injunction to stop the continuing

6

violations of his rights. (*Id.* at 18, 21, 25.)

## IV. DISCUSSION

### A. Statute of Limitations

Section 1983 does not contain a statute of limitations. Without a federal limitations period, the federal courts "apply the forum state's statute of limitations for personal injury actions, along with the forum state's law regarding tolling, including equitable tolling, except to the extent any of these laws is inconsistent with federal law." *Butler v. Nat'l Cmty. Renaissance of Cal.*, 766 F.3d 1191, 1198 (9th Cir. 2014) (quoting *Canatella v. Van De Kamp,* 486 F.3d 1128, 1132 (9th Cir. 2007)).

California's statute of limitations for personal injury claims is two years. Cal. Civ. P. Code § 335.1. The two-year statute of limitations period is tolled for two years if the plaintiff is a prisoner serving a term of less than life, which gives such prisoners effectively four years to file a federal suit. *See id.* § 352.1(a). Here, Plaintiff was sentenced to life with the possibility of parole plus 20 years, which California courts have held is less than life. *See Martinez v. Gomez*, 137 F.3d 1124, 1126 (9th Cir. 1998) (following *Grasso v. McDonough Power Equip.*, 264 Cal. App. 2d 597, 601 (1968)); *see also Brown v. Cnty. of Los Angeles*, 830 F. App'x 231, 232 (9th Cir. 2020) ("[T]he only two California decisions construing § 352.1's tolling language, 'a term less than for life,' establish a categorical rule: a prisoner sentenced to life with the possibility of parole may toll his limitations period.").

The applicable statute of limitations begins to run upon accrual of the plaintiff's claim. *Douglas v. Noelle*, 567 F.3d 1103, 1109 (9th Cir. 2009). Federal law determines when a civil rights claim accrues. *Gibbs v. Farley*, 723 F. App'x 458 (9th Cir. 2018) (citing *Canatella v. Van De Kamp*, 486 F.3d 1128, 1133 (9th Cir. 2007)). A claim accrues under federal law when the plaintiff knows or has reason to know of the injury forming the basis of his action. This is normally on the date of injury. *Ward v. Westinghouse Canada, Inc.*, 32 F.3d 1405, 1407 (9th Cir. 1994).

Therefore, to assess whether the claims against the Superior Court deputy clerks are timely, the Court must determine when Plaintiff knew or should have known that the abstract of

7

1 judgment was incorrect. In the FAC, Plaintiff asserts claims against the Superior Court
2 defendants for events related to his sentencing hearing on July 13, 2007. (Doc. 20 at 10.) If
3 Plaintiff received a copy of the abstract of judgment at that time, Plaintiff's claim would have
4 accrued in 2007. However, this is not established in the record in this case or from available
5 online information from his underlying criminal case.

6 In the FAC, Plaintiff alleges that, on October 27, 2015, Defendant Kirchen-Rolph sent a
7 letter from the superior court to the Chief Medical Officer and a correctional case records analyst
8 at SATF. (*Id.* at 22.) Although Plaintiff does not describe the substance of the letter, Plaintiff
9 asserts it placed CDCR on notice that the 2017 blood draw was an illegal search and seizure. *Id.*

10 The California Court of Appeals for the Fourth District, in a 2019 opinion, referenced this
11 2015 letter from Superior Court to CDCR:

> In a hearing without Avalos or a representative present, the [trial] court granted the "motion/petition" and concluded no further action was necessary because the blood test results had been sent to the court previously, citing to a November 12, 2015 letter from the Department of Corrections. The November 2015 letter is marked as confidential in the trial court docket and not included in the record.

16 *In re Avalos*, No. E069973, 2019 WL 151549, at *2 (Cal. Ct. App. Jan. 10, 2019). The Court of
17 Appeals determined the Department of Corrections complied with the trial court's order in 2015,
18 and "in March 2017, Avalos was forced to submit to *another* blood test based on [the trial
19 court's] order." *Id.* at *6 (emphasis added). The Court of Appeals ordered the Superior Court to
20 modify the abstract of judgment by deleting the order requiring Plaintiff to submit to HIV/AIDs
21 testing. *Id.* at *7.

22 Defendant Kirchen-Rolph's letter of October 27, 2015, indicates Plaintiff submitted to a
23 blood draw in 2015 pursuant to the erroneous abstract of judgment from 2007. At that point,
24 Plaintiff knew or should have known of the error on the abstract of judgment. Therefore,
25 Plaintiff's first claim against the Superior Court defendants accrued in late-2015. Plaintiff filed
26 this action on January 21, 2021. (*See* Doc. 1.) With the two-year statutory tolling of the two-year
27 personal injury statute of limitations under California law, Plaintiff filed his first claim after the
28 expiration of the limitations period. (*See* Doc. 1.) Therefore, unless Plaintiff is entitled to the

benefit of equitable tolling, Plaintiff's claims associated with his sentencing and alleged altered abstract of judgment in Superior Court were time-barred no later than late-2019.

"Equitable tolling under California law "'operates independently of the literal wording of the Code of Civil Procedure' to suspend or extend a statute of limitations as necessary to ensure fundamental practicality and fairness.'" *Jones v. Blanas*, 393 F.3d 918, 928 (9th Cir. 2004) (quoting *Lantzy v. Centex Homes*, 31 Cal.4th 363, 370 (2003)). "Application of California's equitable tolling doctrine requires a balancing of the injustice to the plaintiff occasioned by the bar of his claim against the effect upon the important public interest or policy expressed by the ... limitations statute." *Id.* (quoting *Lantzy*, 31 Cal.4th at 371). For purposes of determining applicability of equitable tolling, lower courts are directed to consider the extent to which defendant had notice of the instant claims in an earlier action, prejudice to the defendant, and the plaintiff's good faith in filing the second claim. *See Azer v. Connell*, 306 F.3d 930, 936 (9th Cir. 2002). *See also Mimms v. Lewis*, 698 F. App'x. 522, 522 (9th Cir. 2017) (finding prisoner not entitled to equitable tolling because he "failed to demonstrate good faith and reasonable conduct") (unpublished).

In conducting this balancing here, the Court is mindful of the public policy interest in ensuring prompt resolution of legal claims and ensuring fairness to defendants such that they may defend the case while witness memories and evidence have not materially deteriorated. The Court balances these equities against any injustice Plaintiff will suffer were his claims rejected on grounds of untimeliness. Here, the Court does not discern from the allegations in Plaintiff's FAC that he suffered any disability preventing him from timely litigating his claims or that enforcing California's statutory tolling regimes would result in a fundamental unfairness. As set forth above, Plaintiff was on notice of the bases of his current claims no later than late-2015 when he first was subjected to an improper blood draw. At that time, Plaintiff had ready access to the courts to timely litigate those claims – as demonstrated by other litigation Plaintiff was involved in at the same time.[4] Given Plaintiff's delay in filing any action for more than one year after having notice of the claim, the Court finds equitable tolling inapplicable.

---

[4] For instance, at the same time, Plaintiff litigated a habeas corpus petition from the lower courts

### B. Supervisory Liability

Plaintiff asserts that all defendants are vicariously liable under the doctrine of *respondeat superior*. (Doc. 20 at 15, 23.) However, liability may not be imposed on supervisory personnel for the actions or omissions of their subordinates under the theory of *respondeat superior* liability. *Iqbal*, 556 U.S. at 676–77; *Lemire v. Cal. Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1074–75 (9th Cir. 2013). "A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Supervisory liability may be based on inaction in the training and supervision of subordinates. *Starr v. Baca*, 652 F.3d 1202, 1205–06 (9th Cir. 2011). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." *Preschooler II v. Clark Cnty. Sch. Bd. of Trustees*, 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting *Johnson*, 588 F.2d at 743).

Supervisory liability may also exist without any personal participation if the official implemented "a policy so deficient that the policy itself is a repudiation of the constitutional rights and is the moving force of the constitutional violation." *Redman v. Cnty. of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (citations & quotations marks omitted), *abrogated on other grounds by Farmer v. Brennan*, 511 U.S. 825 (1970). To prove liability for an action or policy, the plaintiff "must . . . demonstrate that his deprivation resulted from an official policy or custom established by a . . . policymaker possessed with final authority to establish that policy." *Waggy v. Spokane Cnty. Wash.*, 594 F.3d 707, 713 (9th Cir. 2010).

When a defendant holds a supervisory position, the causal link between such defendant and the claimed constitutional violation must be specifically alleged. *Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979). Vague and conclusory allegations concerning the involvement of supervisory personnel in civil rights violations are not sufficient. *Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).

---

through a petition for certiorari at the Supreme Court. *See Avalos v. Sherman*, No. 15-55490 (9th Cir 2015) (noting Plaintiff's filing of motion for reconsideration on November 19, 2015 [Doc. 6] and cert petition on March 10, 2016 [Doc. 8]).

Plaintiff's assertions are conclusory and insufficient to hold any defendant vicariously liable for the actions of others.

### C.     Official v. Individual Capacity Claims

Plaintiff alleges Defendants were "acting within the course and scope of their duties." (Doc. 20 at 11, 14.) However, this language does not indicate whether Plaintiff sues Defendants in their official or personal capacities. To the extent Plaintiff is seeking damages, the Eleventh Amendment bars suits for money damages in federal court against state officials in their official capacity. *Aholelei v. Dep't of Pub. Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007). However, it does not bar official capacity suit for prospective relief, *Wolfson v. Brammer*, 616 F.3d 1045, 1065–66 (9th Cir. 2010), nor does it bar suit for damages against state officials in their personal capacities, *Hafer v. Melo*, 502 U.S. 21, 30 (1991).

"Personal-capacity suits . . . seek to impose individual liability upon a government officer for actions taken under color of state law." *Id.* at 25. Where a plaintiff is seeking damages against a state official and the complaint is silent as to capacity, a personal capacity suit is presumed given the bar against an official capacity suit. *Shoshone-Bannock Tribes v. Fish & Game Comm'n*, 42 F.3d 1278, 1284 (9th Cir. 1994).

A claim for prospective injunctive relief against a state official in his official capacity is not barred by the Eleventh Amendment provided the official has authority to implement the requested relief. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 92 (1989); *accord Rouser v. White*, 707 F. Supp. 2d 1055, 1066 (E.D. Cal. 2010) (proper defendant for injunctive relief in suit seeking implementation of CDCR policy is the CDCR Secretary in his official capacity). Plaintiff's official capacity claims are proper only insofar as plaintiff seeks injunctive relief.

Because Plaintiff has not pleaded the capacities in which he sues each defendant, the Court presumes he sues each defendant in his or her individual capacity. As a result, he can only pursue damages for any constitutional violations and is foreclosed from seeking injunctive relief.

### D.     Due Process

The Due Process Clause protects prisoners from being deprived of life, liberty, or property without due process of law. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). In order to state a

11

claim of deprivation of due process, a plaintiff must allege the existence of a liberty or property interest for which the protection is sought. *Ingraham v. Wright*, 430 U.S. 651, 672 (1977); *Bd. of Regents v. Roth*, 408 U.S. 564, 569 (1972). Liberty interests can arise both from the Constitution and from state law. *Hewitt v. Helms*, 459 U.S. 460, 466 (1983). In determining whether the Constitution itself protects a liberty interest, the court must consider whether the practice in question "is within the normal limits or range of custody which the conviction has authorized the State to impose." *Wolff*, 418 U.S. at 557–58. An allegation of improper use of power by public officers may be construed as alleging a substantive due process violation under § 1983. *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998) (holding that substantive due process protects against arbitrary governmental action).

However, the Fourteenth Amendment does not afford protection from a blood draw. *Schmerber v. California*, 384 U.S. 757, 760–61 (1966). In *Schmerber*, the Supreme Court held that the extraction of blood from an individual in a medically acceptable manner, despite the individual's refusal to consent, does not implicate the Due Process Clause. *Id*. However, "[i]t would be a different case if the [officers] initiated the violence, refused to respect a reasonable request to undergo a different form of testing, or responded to resistance with inappropriate force." *Id.* at 760 n.4.

Plaintiff complains the blood draw was taken over his protest and outside of a sterilized medical setting. (*Id.* at 20.) At ASU/STRHU, inmates are taken to a "medical cage" where blood withdrawals are taken according to "special procedures" whereby the handcuffs are removed, and his arm is placed through the tray slot. (*Id.*) Even though Plaintiff's blood was taken while he was still handcuffed, this minor deviation does not support his claim that blood draws taken by medical staff in that manner and in that designated area was medically improper. Moreover, even if the blood draw in 2017 was taken because of an error made in Superior Court in 2007, these allegations do not support a due process claim.

### E. Excessive Force

Plaintiff alleges Jane Doe and John Doe subjected him to battery and the use of excessive force when they handcuffed him and drew his blood on March 28, 2017. The Eighth Amendment

prohibits prison officials from using excessive physical force against prisoners. *Farmer*, 511 U.S. at 832. The "unnecessary and wanton infliction of pain" on prisoners "constitutes cruel and unusual punishment." *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (internal quotation marks and citation omitted). "Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society." *Farmer*, 511 U.S. at 834 (internal quotation marks and citation omitted). The use of force is constitutional if used to keep or restore order in the prison; it is unconstitutional if used "maliciously or sadistically for the very purpose of causing harm." *Whitley*, 475 U.S. at 320–21.

A correctional officer engages in excessive force in violation of the Eighth Amendment if he (1) uses excessive and unnecessary force under all the circumstances, and (2) "harms an inmate for the very purpose of causing harm," and not "as part of a good-faith effort to maintain security." *Hoard v. Hartman*, 904 F.3d 780, 788 (9th Cir. 2018); *see Hudson v. McMillian*, 503 U.S. 1, 6–7 (1992). The Supreme Court has identified five factors to consider in determining whether an official's use of force was sadistic and malicious for the purpose of causing harm: (1) extent of the injury; (2) need to use the force; (3) relationship between the need to use the force and the amount used; (4) the threat "reasonably perceived" by the official; and (5) any efforts made to temper the severity of the force. *Hudson*, 503 U.S. at 7 (quoting *Whitley*, 475 U.S. at 321).

While a CO may not use excessive force, officers may use some measure of force if an inmate refuses a valid order. *Whitley*, 475 U.S. at 320. The appropriateness of the use of force is determined by the facts and circumstances of each particular case. *Michenfelder v. Summer*, 860 F.2d 328, 335 (9th Cir. 1988). *De minimis* use of physical force generally does not implicate the Eighth Amendment; however, significant injury need not be evident in an excessive force claim. *Hudson*, 503 U.S. at 9; *Oliver v. Keller*, 289 F.3d 623, 628 (9th Cir. 2002) (stating that the Eighth Amendment excessive force standard examines *de minimis* uses of force, not *de minimis* injuries). Because the use of force relates to the prison's legitimate penological interest in maintaining security and order, the Court must be deferential to the conduct of prison officials. *See Whitley*, 475 U.S. at 321–22.

Plaintiff describes the incident as follows:

> These actions [from 2007] led to a Battery upon Avalos on March 28, 2017, including using unreasonable and excessive force, by deliberately and intentionally putting "handcuffs" on Plaintiff to force him to submit to the HIV/AIDS testing done on March 28, 2017. By Defendant's John Doe & Jane Doe, in the Administrative Segregation Unit/Short Term Restricted Housing Unit, to illegally take blood without justification or excuse, intergrally [sic] participating and failing to intervene in the above forcing of blood taking from Plaintiff. Defendant's actions thus deprived Plaintiff of force under the Fourth Amendment . . . .

(Doc. 20 at 11.) When Plaintiff asked if he could refuse the blood draw, medical staff told him that he could not. (*Id.* at 18.) "The medical staff . . . poked Plaintiff with force . . . in his left forearm behind his back, as he was still in medical restraints. . . . Which became a 'battery' and brought to light the 'cruel and unusual punishment Avalos was forced to have placed upon him.'" (*Id.*)

Plaintiff's allegations of excessive force and emotional distress are exaggerated. Essentially, the allegations indicate two members of the medical staff handcuffed him behind his back, placed him in a chair, and took a blood sample from his arm. He does not allege any other use of force by staff members. The use of force was *de minimis*, and there is no indication that the use of force was sadistic, malicious, or for the purpose of causing harm. Given the *de minimis* use of force, any pain or injury suffered by Plaintiff from the handcuffs or the needle was likewise *de minimis*.

Plaintiff is unable to state a claim for excessive force during the involuntary blood draw performed by medical staff at SATF.

### F.  Search and Seizure

The Fourth Amendment guarantees "[t]he right of the people to be secure . . . against unreasonable searches and seizures." U.S. Const. amend. IV. "This right extends to incarcerated prisoners; however, the reasonableness of a particular search is determined by reference to the prison context." *Michenfelder,* 860 F.2d 328 at 332.

In *Turner v. Safley,* the Supreme Court set forth the standard for evaluating prisoners' constitutional claims. 582 U.S. 78 (1987). The Court held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to

14

1  legitimate penological interests." *Id.* at 89. The Court identified four factors relevant in analyzing
2  the reasonableness of a regulation: (1) whether there is a valid, rational connection between the
3  prison regulation and the legitimate governmental interest put forward to justify it; (2) whether
4  there are alternative means of exercising the constitutional right that remain open to the inmates;
5  (3) the nature of any impact that accommodation of the asserted constitutional right will have on
6  guards, other inmates, and on the allocation of prison resources; and (4) whether there are ready
7  alternatives to the prison regulation—the absence of such ready alternatives suggests that the
8  regulation is reasonable while their existence may be evidence of the opposite. *Id.* at 90–91
9  (followed by *Walker v. Sumner*, 917 F.2d 382, 385 (9th Cir. 1990)). Applying this standard to an
10 involuntary blood test under the Fourth Amendment, prison officials must (1) establish the
11 purpose of the blood test and (2) show that the results will be used to further a legitimate
12 penological interest." *Walker*, 917 F.2d at 388.

13      Plaintiff indicates that, when he asked to refuse the blood draw, Jane Doe and/or John
14 Doe informed him that he could not because the draw was being taken pursuant to a court order.
15 (Doc. 20 at 18.) This indicates that medical staff had a legitimate penological interest in
16 submitting Plaintiff to the blood test (*i.e.*, in furtherance of a facially valid court order). Plaintiff
17 alleges that SATF staff knew or should have known that the abstract of judgment was inaccurate
18 because of the letter of August 29, 2017, from CDCR staff to the Superior Court and the January
19 10, 2019, opinion by the Court of Appeal for the Fourth Circuit ordering correction of the
20 abstract. (*Id.* at 11.) However, the correction of the sentencing record occurred *after* the blood
21 draw. Therefore, the HIV/AIDS testing by medical staff at SATF was reasonable under the
22 Fourth Amendment. *See Schmerber*, 384 U.S. at 768 (explaining that means and procedures used
23 to extract an arrested person's blood must be "reasonable" under the Fourth Amendment).

24      **G.   State Law Claims**
25      In Claim V, Plaintiff alleges a violation of the Tom Bane Civil Rights Act ("Bane Act,"),
26 which prohibits the interference with a person's constitutional rights by threat of violence,
27 intimidation, or coercion. Cal. Civ. Code § 52.1. Liberally construed, the amended complaint
28 also appears to assert claims for battery and the intentional infliction of emotional distress.

15

1    California's Government Claims Act[5] requires that a claim against the State or its
2    employees "relating to a cause of action for death or for injury to person" be presented to the
3    Department of General Services' Government Claims Program no more than six months after
4    the cause of action accrues. Cal. Gov't Code §§ 905.2, 910, 911.2, 945.4, 950–950.2.
5    Presentation of a written claim, and action on or rejection of the claim, are conditions precedent
6    to suit. *State v. Superior Ct. of Kings Cnty.* (*Bodde*), 32 Cal.4th 1234, 1245 (Cal. 2004). To state
7    a tort claim against a public entity or employee, a plaintiff must allege compliance with the
8    Government Claims Act. *Id.* Because Plaintiff has not alleged compliance with the Government
9    Claims Act, he has failed to state a claim for a Bane Act violation or torts under California law.
10   *Summers v. Pfeiffer*, No. 1:23-cv-00362-BAM (PC), 2023 WL 4467126, at *4–5 (E.D. Cal. July
11   11, 2023).

### H. Declaratory Relief

Plaintiff has requested declaratory judgment, but such relief is unnecessary. Like other forms of equitable relief, the Court has judicial discretion to grant declaratory judgment, exercised in the public interest. *Johnson v. Torres*, No. 1:22-cv-01457-BAM (PC), 2023 WL 1823605, at *4 (E.D. Cal. Feb. 8, 2023) (quoting *Eccles v. Peoples Bank of Lakewood Village*, 333 U.S. 426, 431 (1948)), *F.&R. adopted*, 2022 WL 782342 (E.D. Cal. Mar. 15, 2022). Declaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties." *United States v. Washington*, 759 F.2d 1353, 1357 (9th Cir. 1985) (citations omitted). If this action reaches trial and a verdict is returned in Plaintiff's favor, then that verdict will be a finding that Plaintiffs constitutional rights were violated. *Johnson*, 2023 WL 1823605, at *4. Because such relief is unnecessary in this case, the Court should decline to exercise its discretion to enter declaratory judgment.

### V. CONCLUSION

For the reasons set forth above, the amended complaint is barred by the statute of

---

[5] This Act was formerly known as the California Tort Claims Act. *City of Stockton v. Superior Ct.*, 42 Cal. 4th 730, 741–42 (Cal. 2007).

limitations and otherwise fails to state a claim upon which relief can be granted. The Court further finds the deficiencies in the complaint cannot be cured by amendment and therefore recommends dismissal of this action without leave to amend.

Accordingly, it is hereby RECOMMENDED:

1. The Court DISMISS this action WITH PREJUDICE for failure to state a claim upon which relief can be granted; and
2. Direct the Clerk of Court to close the case.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case pursuant to the provisions of 28 U.S.C. § 636(b)(l). **Within fourteen (14) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

The Clerk of Court is directed to assign a District Judge to this case.

IT IS SO ORDERED.

Dated:   **September 12, 2023**                    _____
                                                                            UNITED STATES MAGISTRATE JUDGE