UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VINCENT JOHNNY AVALOS,<br><br>        Plaintiff,<br><br>    v.<br><br>SARA L. KIRCHEN-ROLPH, *et al.*,<br><br>        Defendants. | Case No. 1:21-cv-00084-KES-CDB (PC)<br><br>FINDINGS AND RECOMMENDATIONS TO DISMISS CERTAIN CLAIMS AND DEFENDANTS<br><br>(Doc. 39)<br><br>**14- DAY DEADLINE** |

Plaintiff Vincent Johnny Avalos is a state prisoner proceeding pro se and *in forma pauperis* in this civil rights action brought under 42 U.S.C. § 1983.

On November 20, 2022, Plaintiff filed a first amended complaint ("FAC") asserting constitutional and state law claims against employees of the Riverside County Superior Court ("Superior Court") in Indio, California, and the Substance Abuse Treatment Facility ("SATF") in Corcoran, California. (Doc. 20.)

Following the undersigned's screening of the FAC (Doc. 22), on June 2, 2025, the assigned district judge dismissed all of Plaintiff's claims. (Doc. 36.) The Court granted Plaintiff leave to amend his complaint only to the extent of pleading claims arising from any named defendant's subjecting Plaintiff to unauthorized blood draws following a decision of the California Court of Appeals in January 2019 and subsequent modification of Plaintiff's abstract of judgment to remove a court order for blood testing. (*Id.* at 7-9.)

Pending before the Court is Plaintiff's second amended complaint ("SAC"), filed July 7, 2025. (Doc. 39.) The undersigned has screened the SAC and finds it states a cognizable claim against certain defendants but fails to state a claim upon which relief can be granted as to others. Accordingly, the undersigned will recommend that this action proceed on the cognizable claim against certain defendants and that, because the Court previously extended to Plaintiff an opportunity to amend his claims to remedy identified deficiencies and it appears further amendment would be futile, the non-cognizable claims be dismissed with prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i)–(ii) and 28 § 1915A(b)(1).

## I.     SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner raises claims that are frivolous or malicious, fail to state a claim on which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(i)–(iii); 28 U.S.C. § 1915A(b). These provisions authorize the court to dismiss a frivolous *in forma pauperis* complaint *sua sponte*. *Neitzke v. Williams*, 490 U.S. 319, 322 (1989). Dismissal based on frivolousness is appropriate where the claim is "based on an indisputably meritless legal theory" or "whose factual contentions are clearly baseless." *Id.* at 327. The Court must dismiss a complaint if it lacks a cognizable legal theory or fails to allege sufficient facts to support a cognizable legal theory. *O'Neal v. Price*, 531 F.3d 1146, 1151 (9th Cir. 2008) (citing *Vaden v. Summerhill*, 449 F.3d 1047, 1050 (9th Cir. 2006)).

## II.    PLEADING REQUIREMENTS

### A.     Federal Rule of Civil Procedure 8(a)

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002). The statement must give the defendant fair notice of the plaintiff's claims and the grounds supporting the claims. *Id.* at 512.

2

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Plausibility does not require probability, but it requires more than the "sheer possibility" of a defendant's liability. *Id.* (quoting *Twombly*, 550 U.S. at 556). A claim is plausible when the facts pleaded allow the court to make reasonable inferences that the defendant is liable for wrongful conduct. *Id.* (citing *Twombly*, 550 U.S. at 556). However, courts "are not required to indulge unwarranted inferences." *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1064 (9th Cir. 2008).

The Court construes pleadings of pro se prisoners liberally and affords them the benefit of any doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citation omitted). This liberal pleading standard applies to a plaintiff's factual allegations but not to his legal theories. *Neitzke*, 490 U.S. at 330 n.9. Moreover, a liberal construction of the complaint may not supply essential elements of a claim not pleaded by the plaintiff. *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1257 (9th Cir. 1997). The mere possibility of misconduct and facts merely consistent with liability is insufficient to state a cognizable claim. *Iqbal*, 556 U.S. at 678; *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). Vague and conclusory allegations of official misconduct are insufficient to withstand a motion to dismiss. *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

Dismissal of a pro se complaint without leave to amend is proper only if it is "absolutely clear that no amendment can cure the defect." *Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) (quoting *Akhtar v. Mesa*, 698 F.3d 1202, 1212–13 (9th Cir. 2012)); *see Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011) ("Although leave to amend should be given freely, a district court may dismiss without leave where a plaintiff's proposed amendments would fail to cure the pleading deficiencies and amendment would be futile.").

**B.     Linkage and Causation**

Section 1983 provides a cause of action for the violation of constitutional or other federal

rights by persons acting under color of state law. *See* 42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred." *Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003) (quoting *Baker v. McCollan,* 443 U.S. 137, 144 n.3 (1979)).

To state a claim under section 1983, a plaintiff must show a causal connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff. *See Rizzo v. Goode*, 423 U.S. 362, 373–75 (1976). The Ninth Circuit has held that a government actor may be liable under section 1983 if he performs an affirmative act, participates in another's affirmative acts, or fails to perform an act which he is legally required to do that causes the prisoner to suffer a deprivation of rights. *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978) (citing *Sims v. Adams*, 537 F.2d 829 (5th Cir. 1976)). In addition to direct participation, a government actor may be liable for "setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." *Preschooler II v. Clark Cnty. Sch. Bd. of Trustees*, 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting *Johnson*, 588 F.2d at 743).

### III. BACKGROUND

#### A. Procedural History[1]

Plaintiff was convicted in 2007 of attempted premeditated and deliberate murder and other related crimes. In December 2017, Plaintiff filed in state court a petition for writ of habeas corpus, alleging, among other things, that his abstract of judgment should be amended to exclude the trial court's order for HIV/AIDS testing pursuant to California Penal Code sections 1202.1 and 1202.6. The Court of Appeals agreed that the trial court did not have authority to require Plaintiff to submit to HIV testing while in prison. Accordingly, the Court of Appeals granted the writ and ordered the trial court to (1) modify the abstract of judgment to delete the order requiring petitioner to submit to HIV/AIDS testing, and (2) forward a certified copy of the amended

---

[1] The following narrative is derived from the California Court of Appeals' decision, *In re Avalos*, No. E069973, 2019 WL 151549 (Cal. Ct. App. Jan. 10, 2019), granting Plaintiff's petition for writ of habeas corpus. The Court takes judicial notice of this state court decision. *See Harris v. Cnty. of Orange*, 682 F.3d 1126, 1131-32 (9th Cir. 2012).

4

abstract of judgment to the Department of Corrections and Rehabilitation.

**B.     Plaintiff's Allegations and Claims**

In the SAC, Plaintiff alleges that, on October 22, 2019, Defendant Jane Doe, a Medical Staff/Nurse, attempted to make Plaintiff submit to an HIV/AIDS test. Although unclear, Plaintiff seems to allege that he submitted a refusal form in which he wrote that he did not request HIV/AIDS testing and that a doctor had not informed him during an earlier visit that blood would need to be drawn for an HIV test. Defendant Jane Doe stated that an unidentified doctor "ordered the blood testing." Plaintiff thereafter sent a motion/request to the Superior Court to stop staff from taking Plaintiff's blood for HIV/AIDS testing. The Superior Court issued a minute order directing staff to stop taking Plaintiff's blood for HIV/AIDS testing on December 24, 2019. The court's minute order was sent to the California Department of Corrections and Rehabilitation ("CDCR").

On October 12, 2020, Defendant Jane Doe, a Medical Staff/Nurse, attempted to make Plaintiff give blood for HIV testing. Plaintiff again signed a refusal form. Defendant Jane Doe stated that an unidentified doctor "ordered the blood testing."

On February 11, 2021, Defendant Jane or John Doe, "in fact," took blood from Plaintiff for HIV testing. Defendant Jane or John Doe told Plaintiff that the blood test was for Hepatitis C screening and not for any HIV/AIDS- related testing/screening. This statement by Defendant Jane or John Doe "deceived [Plaintiff] into submitting to a blood test that was said to be for any Hepatitis C." Defendant Jane or John Doe told Plaintiff that the blood test for Hepatitis C was ordered by Defendant Julius P&S Metts, a primary care provider at SATF. The blood test result shows that it was undertaken for HIV testing. Defendant Metts knew or should have known that the HIV testing was ordered in error.

Plaintiff claims that Defendants' actions caused him to suffer irregular bowel movements, mental and emotional distress, and PTSD. Plaintiff seeks monetary, declaratory, and injunctive relief, including an order directing Defendants to cease subjecting Plaintiff to further HIV/AIDS blood testing, and also, appointment of a special oversight committee to review all abstracts of judgments within CDCR to prevent future involuntary HIV/AIDS screening of incarcerated

5

people.

Plaintiff names the following Defendants:

1. Sara L Kirchen-Rolph, Court Executive Officer/Clerk of the Superior Court, County of Riverside;
2. Riverside County Superior Court;
3. Jeff Macomber, Secretary of the California Department of Corrections & Rehabilitation;
4. Dr. Julius P&S Metts, Primary Care Provider at SATF;
5. Gena Jones, Director of Division of Adult Institutions, CDCR;
6. Jane Doe #1, a medical staff member at SATF that attempted to subject Plaintiff to a blood draw on October 22, 2019;
7. Jane Doe #2, a medical staff member at SATF that attempted to subject Plaintiff to a blood draw on October 12, 2020; and
8. Jane or John Doe, a medical staff member at SATF that deceived and subjected Plaintiff to a blood draw on February 11, 2021.

Liberally construing the amended complaint, Plaintiff asserts claims for violations of the Fourth Amendment's prohibition on unlawful search and seizures, the Eighth Amendment's prohibition on deliberate indifference to serious medical needs, and the Fourteenth Amendment's Due Process Clause.

**IV.   DISCUSSION**

   **A.   Claims against Supervisory Officials**

Plaintiff seeks to hold liable certain supervisory officials.  First, Plaintiff alleges that Defendant Macomber, as the Secretary of CDCR, has/had "authority" to stop CDCR medical staff from taking unauthorized blood draws. (Doc. 39 at 8.) Second, Plaintiff alleges that Defendant Jones, as the Director of Division of Adult Institutions for CDCR, is responsible for the actions of Defendant Jane or John Doe in deceiving and illicitly taking Plaintiff's blood for HIV/AIDS testing on February 11, 2021.  (*Id*. at 9.)

However, liability may not be imposed on supervisory personnel for the actions or

omissions of their subordinates under the theory of respondeat superior. *Iqbal*, 556 U.S. at 676-77; *see e.g., Simmons v. Navajo Cnty., Ariz.*, 609 F.3d 1011, 1020-21 (9th Cir. 2010) (plaintiff required to adduce evidence the named supervisory defendants "themselves acted or failed to act unconstitutionally, not merely that subordinate did"), *overruled on other grounds by Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1070 (9th Cir. 2016); *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002) ("In order for a person acting under color of state law to be liable under section 1983 there must be a showing of personal participation in the alleged rights deprivation: there is no respondeat superior liability under section 1983").

Supervisors may be held liable only if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." *Corales v. Bennett*, 567 F.3d 554, 570 (9th Cir. 2009) (quoting *Preschooler II*, 479 F.3d at 1183. Accord *Starr v. Baca*, 652 F.3d 1202, 1205-06 (9th Cir. 2011) (supervisory liability may be based on inaction in the training and supervision of subordinates).

Supervisory liability may also exist without any personal participation if the official implemented "a policy so deficient that the policy itself is a repudiation of the constitutional rights and is the moving force of the constitutional violation." *Redman v. Cnty. of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (citations & quotations marks omitted), *abrogated on other grounds by Farmer v. Brennan*, 511 U.S. 825 (1970).

To prove liability for an action or policy, the plaintiff "must ... demonstrate that his deprivation resulted from an official policy or custom established by a ... policymaker possessed with final authority to establish that policy." *Waggy v. Spokane Cnty. Washington*, 594 F.3d 707, 713 (9th Cir.2010). When a defendant holds a supervisory position, the causal link between such defendant and the claimed constitutional violation must be specifically alleged. *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979). Vague and conclusory allegations concerning the involvement of supervisory personnel in civil rights violations are not sufficient. *See Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).

Plaintiff's assertions are conclusory and insufficient to hold Defendant Macomber or Defendant Jones vicariously liable for the actions of others. The Court advised Plaintiff in dismissing previously named supervisory defendants that "the causal link between such defendant and the claimed constitutional violation must be specifically alleged." (Doc. 22 at 10) (citing *Fayle*, 607 F.2d at 862); *see* (Doc. 36 at 5-6 & n.4) (dismissing supervisory defendants). Because Plaintiff has not specifically alleged the causal link between Defendant Macomber or Defendant Jones and the alleged actions of others in relation to the blood draws of Plaintiff, despite having awareness of the governing legal standard, the undersigned will recommend that claims against Defendant Macomber and Defendant Jones be dismissed with prejudice.

### B. Claims Against a State Court and Court Staff

Plaintiff seeks to hold liable Defendant Kirchen-Rolph, as the executive officer and clerk of the court, Riverside County Superior Court, for filing and failing to notify Plaintiff of a "Notice of HIV Testing" on October 27, 2015, pursuant to California Penal Code section 1202.1. Liberally construed, it appears Plaintiff alleges that Defendant Kirchen-Rolph's action was erroneous, as demonstrated by the Court of Appeals' direction that Plaintiff's abstract of judgment be modified to delete the order requiring Plaintiff to submit to HIV/AIDS testing, and that her action led to Plaintiff's unauthorized blood draw(s). Plaintiff also seeks to hold liable Defendant Superior Court of California, County of Riverside, although Plaintiff does not allege how that court is liable for Plaintiff's constitutional injuries.

Claims against Defendant Kirchen-Rolph fail for two reasons. First, the assigned district judge previously dismissed without leave to amend claims against court clerks, including Defendant Kirchen-Rolph, as barred by the doctrine of quasi-judicial immunity. (Doc. 36 at 5.) Second, the assigned district judge granted Plaintiff leave to amend *only* to the extent of asserting claims based on alleged blood draws and testing that occurred after January 10, 2019 (the date the Court of Appeals directed Plaintiff's abstract of judgment be corrected). Thus, Defendant Kirchen-Rolph's alleged conduct on October 27, 2015, is not within the limited grant of leave to amend by the assigned district judge.

As to claims against Defendant Superior Court of California, County of Riverside, the Eleventh Amendment prohibits federal courts from hearing suits brought against a nonconsenting state. *Munoz v. Super. Ct. of Los Angeles Cnty.*, 91 F.4th 977, 980 (9th Cir. 2024). The Superior Court of the State of California has sovereign immunity as an arm of the state. *Id.* Because no exceptions to Eleventh Amendment immunity apply, and because the Superior Court is an arm of the state, it is immune from suit under the Eleventh Amendment. *Id.; see Simmons v. Sacramento Cty. Super. Ct.*, 318 F.3d 1156, 1161 (9th Cir. 2003) ("Plaintiff cannot state a claim against the Sacramento County Superior Court (or its employees), because such suits are barred by the Eleventh Amendment.").

Accordingly, the undersigned will recommend that claims against Defendant Kirchen-Rolph and Defendant Superior Court of California, County of Riverside, be dismissed with prejudice.

### C. Claims Against Officials Involved in Blood Draws

In *Turner v. Safley,* the Supreme Court set forth the standard for evaluating prisoners' constitutional claims. 582 U.S. 78 (1987). The Court held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Id.* at 89. The Court identified four factors relevant in analyzing the reasonableness of a regulation: (1) whether there is a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it; (2) whether there are alternative means of exercising the constitutional right that remain open to the inmates; (3) the nature of any impact that accommodation of the asserted constitutional right will have on guards, other inmates, and on the allocation of prison resources; and (4) whether there are ready alternatives to the prison regulation—the absence of such ready alternatives suggests that the regulation is reasonable while their existence may be evidence of the opposite. *Id.* at 90–91 (*followed by Walker v. Sumner*, 917 F.2d 382, 385 (9th Cir. 1990)).

Applying this standard to an involuntary blood test under the Fourth, Eighth, and Fourteenth Amendments, prison officials are required "(1) to establish what the purpose of the blood testing was, and (2) to show that the results were going to be used to further a legitimate

9

1  penological end." *Walker*, 917 F.2d at 388. *Jones v. Hennessy*, 981 F.2d 1258 (9th Cir. 1992)
2  (citing *Walker*, holding that an inmate may allege violations of the Fourth, Eighth, and
3  Fourteenth Amendments based on his unconsented blood draw by prison officials)
4  (unpublished).

### 1. October 2019 and October 2020 Attempted Blood Draws

Liberally construing the allegations of the second amended complaint, Plaintiff fails to plead cognizable claims against the nurses he alleges "attempted" to draw blood from him on October 22, 2019, and on October 12, 2020 (Jane Doe #1 and Jane Doe #2, respectively.) Thus, Plaintiff's Fourth Amendment rights were not violated because he was not subject to any search or seizure – let along any *unreasonable* search/seizure. Similarly, Plaintiff's Eighth Amendment rights were not violated because Defendants' mere request that Plaintiff submit to a blood draw before he refused does not evidence deliberate indifference. Likewise, Plaintiff's Fourteenth Amendment rights were not violated because he does not allege that Defendants' conduct in merely soliciting him to submit to a blood draw violated any state-created, protected liberty interest.

In short, Plaintiff did not suffer any constitutional injury by virtue of the alleged conduct of Jane Doe #1 and Jane Doe #2 in attempt to gain Plaintiff's consent to a blood draw. *See Carey v. Piphus*, 435 U.S. 247, 256, 264 (1978) (compensatory damages, including for pain and suffering, awarded under § 1983 must be based on the actual injuries caused by the deprivation of the constitutional right); *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 307 (1986) ("Deterrence is also an important purpose of this system, but it operates through the mechanism of damages that are compensatory—damages grounded in determinations of plaintiffs' actual losses"); *see also Farrar v. Hobby*, 506 U.S. 103, 113 (1992) (interpreting *Carey* and *Stachura* to mean that "no compensatory damages may be awarded in a § 1983 suit absent proof of actual injury").

### 2. February 2021 Blood Draw

Liberally construing the allegations of the second amended complaint, Plaintiff adequately pleads cognizable claims against Defendant Jane or John Doe and Defendant Julius

10

P&S Metts under the Fourth Amendment arising from their involvement in Plaintiff's unconsented blood draw on February 11, 2021. However, Plaintiff's claims are not cognizable separately under either the Eighth or Fourteenth Amendments.

### a. Fourth Amendment Claim

An unconsented blood draw constitutes a "search" under the Fourth Amendment that passes constitutional muster only if it is reasonable. *United States v. Kriesel*, 508 F.3d 941, 946 & n.6 (9th Cir. 2007).

Here, Plaintiff adequately alleges that the search performed by blood draw was unreasonable in violation of the Fourth Amendment because it was the product of Defendants' deceit and trickery. Specifically, Plaintiff alleges Defendants knew he was not subject to court-ordered HIV/AIDS testing based on the state court's notification of such to CDCR; nevertheless, in order to obtain HIV/AIDS blood test results, the Defendants ordered a Hepatitis C blood draw and told Plaintiff the blood draw was for Hepatitis C. *See, e.g., United States v. Ramirez*, 976 F.3d 946, 957-59 (9th Cir. 2020) (otherwise valid search rendered unreasonable under the Fourth Amendment due to agents' employment of deceit); *United States v. Robson*, 477 F.2d 13, 18 (9th Cir. 1973) (consensual search deemed unreasonable if the consent is obtained by trickery or deceit). To the extent Defendants' actions were taken pursuant to prison regulation or policy, Plaintiff adequately alleges for purposes of screening that the policy is unreasonable under the *Walker* test. *Cf. Leavitt v. Wickham*, No. 2:13-cv-00490-GMN-CWH, 2015 WL 430463, at *5 (D. Nev. Feb. 3, 2015) (granting summary judgment to prison officials where undisputed evidence satisfied *Walker* test that unconsented blood draws were reasonable under the Fourth Amendment).

### b. Eighth Amendment Claim

Although the cover page to Plaintiff's complaint lists as a cause of action "Excessive Force" (Doc. 20 at 1), there are no allegations in the body of the complaint related to any Defendant's engagement in excessive force. Because Plaintiff included in the FAC a since-dismissed excessive force claim (*see* Doc. 22 at 12-14; Doc. 36 at 7), the undersigned presumes Plaintiff inadvertently included the phrase "excessive force" as a carryover to the SAC.

Plaintiff nevertheless asserts that his Eighth Amendment rights were violated "for involuntary HIV/AIDS testing absent a clear showing that the testing was reasonably related to a penological goal or interest." (*Id.* at 7.) Plaintiff invokes exclusively the Fourth Amendment throughout the body of his complaint and never refers to the Eighth Amendment, although he does allege that Defendant Metts' conduct constitutes "deliberate indifference." (*Id.* at 14-15). Because Plaintiff appears to allege that a medical doctor violated his Eighth Amendment rights, the undersigned liberally construes any purported Eighth Amendment claim asserted in the SAC as one alleging unconstitutional medical care.

Prison officials violate the Eighth Amendment if they are "deliberate[ly] indifferen[t] to [a prisoner's] serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "A medical need is serious if failure to treat it will result in '"significant injury or the unnecessary and wanton infliction of pain."'" *Peralta v. Dillard*, 744 F.3d 1076, 1081-82 (9th Cir. 2014) (quoting *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by *WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc)).

To maintain an Eighth Amendment claim based on medical care in prison, a plaintiff must first "show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Second, the plaintiff must show the defendants' response to the need was deliberately indifferent." *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012) (quoting *Jett*, 439 F.3d at 1096 (quotation marks omitted)).

As to the first prong, indications of a serious medical need "include the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (citation & internal quotation marks omitted); accord *Wilhelm*, 680 F.3d at 1122; *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) ("Examples of serious medical needs include '[t]he existence of an injury that a reasonable doctor or patient would find important and

12

worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain").

As to the second prong, deliberate indifference is "a state of mind more blameworthy than negligence" and "requires 'more than ordinary lack of due care for the prisoner's interests or safety.'" *Farmer*, 511 U.S. at 835 (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). Deliberate indifference is shown where a prison official "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id*. at 847. In medical cases, this requires showing: (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference. *Wilhelm*, 680 F.3d at 1122 (quoting *Jett*, 439 F.3d at 1096). "A prisoner need not show his harm was substantial; however, such would provide additional support for the inmate's claim that the defendant was deliberately indifferent to his needs." *Jett*, 439 F.3d at 1096 (citing *McGuckin*, 974 F.2d at 1060).

Deliberate indifference is a high legal standard. *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Id*. at 1057 (quoting *Farmer*, 511 U.S. at 837). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" *Id*. (quoting *Gibson v. Cnty. of Washoe, Nevada*, 290 F.3d 1175, 1188 (9th Cir. 2002)).

To prevail on a deliberate-indifference claim, a plaintiff must also show that harm resulted from a defendant's wrongful conduct. *Wilhelm*, 680 F.3d at 1122; *see Jett*, 439 F.3d at 1096; *Hallett v. Morgan*, 296 F.3d 732, 746 (9th Cir. 2002) (prisoner alleging deliberate indifference based on delay in treatment must show delay led to further injury).

Here, the undersigned acknowledges that, under some circumstances, a plaintiff could cognizably plead an Eighth Amendment claim based on medical personnel's deliberately indifferent undertaking of a blood draw. *See Ryncarz v. Eikenberry*, 824 F. Supp. 1493, 1501-02 (E.D. Wash. 1993) (dicta). However, Plaintiff's allegations do not fit within a claim for

13

deliberate indifference to serious medical needs. Specifically, Plaintiff's allegations are not that medical staff knew Plaintiff faced any substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it. *See Farmer*, 511 U.S. at 847. Rather, he alleges his blood was drawn under false pretenses. As set forth above, while that might constitute a cognizable claim under the Fourth Amendment, it does not amount to a cognizable claim under the Eighth Amendment.

### c. Fourteenth Amendment Claim

As with his Eighth Amendment claim, Plaintiff invokes but fails to advance any plausible allegations in support of his apparent Fourteenth Amendment claim. Any claim pursuant to the Fourteenth Amendment based on Plaintiff's alleged involuntary blood draw fails for two reasons.

First, as a matter of procedural due process, "[t]he Supreme Court has held 'the extraction of blood from an individual in a simple, medically acceptable manner, despite the individual's lack of an opportunity to object to the procedure, does not implicate the Due Process Clause.'" *Leavitt*, 2015 WL 430463, at *5 (quoting *Schmerber v. California*, 384 U.S. 757, 759–60 (1966)); accord *Hamilton v. Brown*, 630 F.3d 889, 896-97 (9th Cir. 2011) (relying on *Schmerber*).

Second, as a matter of substantive due process, "[w]here a particular amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing [a plaintiff's] claims.'" *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (plurality opinion) (holding that because alleged pretrial deprivations of liberty are cognizable under the Fourth Amendment, an aggrieved party may not seek relief separately under the Due Process Clause of the Fourteenth Amendment) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)).

### D.  Declaratory Relief

The assigned district judge previously dismissed Plaintiff's claim for declaratory relief because Plaintiff seeks to recover damages for the alleged constitutional violations. (Doc. 36 at

14

8). Nevertheless, Plaintiff reasserts his claim for declaratory relief in the SAC. (Doc. 39 at 16.) Accordingly, the undersigned will recommend that this claim be dismissed. *See United States v. Washington*, 759 F.2d 1353, 1357 (9th Cir. 1985) (citations omitted).

## V.   CONCLUSION

Accordingly, it is hereby RECOMMENDED:

1. This action proceed on Plaintiff's claims against Defendant Jane or John Doe and Defendant Julius P&S Metts under the Fourth Amendment arising from their alleged involvement in Plaintiff's blood draw on February 11, 2021; and
2. All remaining claims and Defendants be dismissed without leave to amend.

These Findings and Recommendations will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). **Within 14 days** after being served with a copy of these Findings and Recommendations, a party may file written objections with the Court. Local Rule 304(b). The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations" and **shall not exceed 15 pages** without leave of Court and good cause shown. The Court will not consider exhibits attached to the Objections. To the extent a party wishes to refer to any exhibit(s), the party should reference the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise reference the exhibit with specificity. Any pages filed in excess of the 15-page limitation may be disregarded by the District Judge when reviewing these Findings and Recommendations under 28 U.S.C. § 636(b)(l)(C). A party's failure to file any objections within the specified time may result in the waiver of certain rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014)

IT IS SO ORDERED.

Dated:   **August 15, 2025**

UNITED STATES MAGISTRATE JUDGE

15